**Alois J. RATERMANN et al., Respondents,**

v.

**George RATERMANN et al., Defendants,**

**Madeline Kreikemeler, Appellant.**

No. 51590.

Supreme Court of Missouri,
Division No. 2.

Sept. 12, 1966.

**892** ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Forrest M. Hemker, St. Louis, Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, of counsel, for respondents Alois J. Ratermann, Edward E. Ratermann, Marcella Ratermann Sheridan, Mary Ratermann Mollerus and Alois J. Ratermann and Edward E. Ratermann, Coexecutors Under Wills of Al Ratermann and Theresa Ratermann, Deceased.

C. Perry Bascom, Bryan, Cave, McPheeters & McRoberts, St. Louis, for appellant.

BARRETT, Commissioner.

This is an action by executors and others to construe certain trusts, particularly the language of three of nine irrevocable inter vivos trusts created by Henry Ratermann, Sr., on May 26, 1905. Ultimately the trusts were all for the benefit of Mr. Ratermann's wife Catherine and their eight sons and daughters for life with gifts over upon termination of the trusts. One of the sons, Charles, was an incompetent, was never married and had no children. One of the daughters, Sophia, together with her husband, Joseph Kreikemeier, on September 6, 1918, adopted a son, Victor. Sophia died in 1928 and on April 11, 1931, her husband, Joseph, adopted Madeline. Victor died intestate on September 6, 1961, predeceased by his adoptive father Joseph. The trust for the benefit of Charles terminated upon his death on September 17, 1958, and the other two trusts involved here, the one for the settlor's wife Catherine and the other for his daughter Sophia, terminated on February 18, 1953, fifteen years after his death. Madeline Kreikemeier claims an interest of the value of $28,000 in these three trusts. In the language of her brief, she claims that interest "as the sole heir of Victor," she says "that although she was adopted by only one of the adoptive parents of Victor Kreikemeier, she has thereby become, to all intents and purposes, a natural sister of Victor Kreikemeier, and that she is entitled to succeed to any interests he may have derived in consequence of his having been adopted by Sophia Ratermann Kreikemeier and having thus become 'issue' of Sophia and an 'heir' of the settlor." Thus Madeline says that she is not claiming to share in the three trusts "in her own right but as the sole heir of Victor Kreikemeier, deceased intestate, her brother by adoption." The other life beneficiaries left children or grandchildren who succeeded to the corpus of the other six trusts on termination and only the trusts for Charles, Sophia, and their mother are involved here. The trial court found that Madeline had no interest whatever in the Ratermann trusts and she has appealed.

Insofar as material, the question presented here turns upon the construction to be placed upon this language in the three trusts, first to the wife Catherine who predeceased her husband:

"* * * the remainder shall vest absolutely in my beloved children Henry, Jr., George, Katie, Charles, Sophia, Alois, Regina and Joseph share and share alike subject to the provisions hereafter made and provided that in case any of my said children be dead, *the issue of such deceased child* shall take the portion the deceased father or mother would have taken if living, *the division to be per stirpes and not per capita, and in default of such issue my heirs shall take per stirpes and not per capita.*"

Second, as to the daughter Sophia, there was a conclusion excluding her husband from any benefit, enjoyment or interference and free from any "marital rights" of any husband, but as to the gift over:

"If my said daughter Sophia Ratermann die *leaving issue, such issue shall together receive and take* as much as the

said Sophia Ratermann would have taken hereunder, if living, *but the division shall be according to the root (per stirpes) and not by the head (per capita) and if said Sophia Ratermann die without leaving issue my heirs shall take per stirpes and not per capita."*

And third, as to his son Charles, "(t)here being a necessity for special provision for my son Charles on account of his misfortune," the settlor concluded:

"* * * *if my said son die leaving issue, said issue shall take per stirpes and not per capita and if he leave no issue then my heirs shall take per stirpes and not per capita* and full title shall not vest in said issue or in my heirs as the case may be, until fifteen (15) years after my death * * *."

The appellant, Madeline, contends that the language of the quoted provisions designate and define "a class" and constitute "a class gift" and concludes because of the rather recently (1917, 1943) changed and liberal policy toward adopted persons (RS Mo 1959, §§ 453.090, 453.150, V.A.M.S.) adopted children fall within the class "limited to issue of the primary beneficiaries (the life tenant wife and children) or heirs of the settlor" because the statutes now place "an adopted child in the bloodstream both of his adoptive parents and of the ancestors of the adoptive parents." The appellant urges that the court erred as a matter of law in concluding that Victor, the adopted son of Sophia and Joseph Kreikemeier, was not within the class of distributees designated by the settlor. She says that Victor was entitled to share in the Ratermann trusts "both as issue of Sophia and as an heir of the settlor (Henry Ratermann, Sr.) because the law in effect at the time of termination of the trusts governed his status as such and brought him within those classes." To reach this result the appellant contends that the meaning of the word "child" and other definitive language is not to be determined as of the date of the trusts, 1905, but that the settlor's intent,

particularly as to adopted persons, is to be determined by the law in force as of the date when the trusts terminated, here in 1953 and 1961. According to the law on those dates, the termination of the trusts, the appellant contends that an adopted child "derived the same status from this law as would have been accorded a natural child." Her principal reliance to establish these propositions is upon the cases of Vreeland v. Vreeland, Mo., 296 S.W.2d 55 and St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S.W. 2d 685. Having thus demonstrated these propositions it is concluded that "Appellant Madeline Kreikemeier, as the adoptive sister of Victor Kreikemeier, is entitled to succeed to his interest in the trust estates by intestate succession because both the law and public policy respective of adoption in Missouri place her in the relation of a natural sister to him."

The appellant's claims have been set forth in more or less elaborate detail to the end that her theory of her right to succeed to an interest in these inter vivos trusts may plainly appear inasmuch as it is not proposed in this opinion to analyze and consider the arguments one by one. There are currently under submission in this court three cases concerned with the rights of adopted persons, they are all complex and perplexing and unless compelled by the particular case it is neither necessary nor desirable to attempt a general consideration of the law of adoption, its philosophy and theory. In the particular circumstances of this record there are precisely controlling cases and they distinguish the cases relied upon by the appellant, including Commerce Trust Co. v. Weed, Mo., 318 S.W.2d 289, and it is not necessary to elaborate on them here and again note the distinctions in facts or controlling principles. The controlling cases to list only four are First National Bank of Kansas City v. Sullivan, Mo., 394 S.W.2d 273; Leeper v. Leeper, 347 Mo. 442, 147 S. W.2d 660, 133 A.L.R. 586; Melek v. Curators of University of Missouri, 213 Mo.App. 572, 250 S.W. 614 and Wyeth v. Merchant, D.C., 34 F.Supp. 785. Relevant annotations

noting the cases and confined to deeds and inter vivos instruments, excluding will cases, are 43 A.L.R.2d 1183 and 86 A.L.R.2d 115.

■ The only general rules to note, and upon which all the cases are based, are that each case of necessity is determined upon its peculiar facts and the particular instrument to be construed all to the ultimate and primary end of effectuating the settlor's intention. St. Louis Union Trust Co. v. Hamilton, 361 Mo. 548, 235 S.W.2d 241. And "(t)he determination of the right of an adopted child to succeed to interests in property which by the terms of a deed of conveyance, a trust indenture, a will, or other instrument, are limited to 'a child,' 'children,' 'issue,' 'heirs,' 'legal heirs,' or 'heirs of the body,' etc., of the person or class of persons named in such instrument, is affected by, and depends upon many diverse factors, especially the content and phraseology of the particular instruments involved." 2 Am.Jur.2d (Adoption) § 92, p. 933. Before going further, as the respondents remind, "It is essential that one keep in mind that appellant, Madeline Kreikemeier, is a child adopted April 11, 1931, by Joseph Kreikemeier, surviving spouse of Sophia Ratermann Kreikemeier, she having died January 11, 1928. Appellant, Madeline Kreikemeier, does not claim as *issue* of Sophia or *heir* of the grantor, Henry Ratermann, Sr., but as the sole heir of Victor, the adopted child of Sophia and Joseph Kreikemeier under date of September 6, 1918."

■ But as stated, both factually and legally, this appeal is governed by prior cases. In the first place and determinative of the appellant's basic argument, it has been pointed out repeatedly in both wills and inter vivos instruments and "(i)t is fundamental that it is testator's intention at the time of the execution of the instrument— *as of the time of the creation of the trust*— that we seek to determine. * * * This is in accordance with the general rule that whether an adopted child is embraced within in the meaning of a described class of beneficiaries in a will is governed by the law in force at the time the will or other instrument was executed." First National Bank of Kansas City v. Sullivan, 394 S.W.2d l. c. 281. In other words the settlor's beneficiaries were identifiable as of the date the trusts terminated but his intention and the qualification of those who were to take was determined according to the law in effect when the trusts were created, here in 1905. In Leeper v. Leeper, supra, a deed executed in 1900 left property to "William F. Leeper, during his natural life and at his death to his heirs, but should he die without children then to his full brothers and their heirs." In 1934 William F. and his wife adopted Marvin and the question was whether he qualified as "children" within the meaning of "his heirs." In answering several of the arguments made by the appellant here, the court first held that the law in force in 1900 governed unaffected by the 1917 amendment to the adoption-laws. It is not necessary to set forth all the factors considered by the court, the crux of the matter was that under the adoption statute in force in 1900 (RSMo 1899, § 5248) an adopted child did not fall within "the classification of a natural born child." In 1900 the adopted child inherited from its adopting parent but an adopted child was "not an heir of collateral kindred of the adopting parents." The court concluded: "As the statutes and decisions of this state stood at the date of the execution and delivery of the deed, an adopted child was not included in the word 'children.' * * * From the deed and surrounding circumstances, we hold that the grantor did not intend to include an adopted child of William F. Leeper within the meaning of the word 'children' as that word was used in the deed." Leeper v. Leeper, 347 Mo. l. c. 448–449, 451, 147 S.W.2d l. c. 662–663, 664. The language most frequently employed in the Ratermann trust instruments is "issue of such deceased child," "and in default of such issue my heirs shall take per stirpes and not per capita," or "if said Sophia Ratermann die without leaving issue my heirs shall take per stirpes and not per capita," or as to Charles "if he leave no

issue then my heirs shall take per stirpes and not per capita." When the Ratermann trusts were established in 1905 the word "issue" and related terms had a well-known meaning, they referred to and applied to "a child of the blood" and did not include adopted children of a settlor's grandchild. Wyeth v. Merchant, 34 F.Supp. 1. c. 789–790. Madeline's status and relationship with respect to the Ratermann trusts is plainly governed by these prior cases and therefore the judgment is affirmed.

STOCKARD, C., concurs.

PRITCHARD, C., not sitting.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

EAGER, P. J., FINCH and DONNELLY, JJ., and WOLFE, Special Judge, concur.