Larry Henry NAIL, Fay Ann Wynne
and Howell Smith Wynne,
Appellants,

v.

George THOMPSON, IV and James L. Ervin, Trustees, Jerome Burley, Sharon Stimson Gilbert, Dennis Stimson, Jack Kirksmith, Jasper Kirksmith, Sam Nail Webb, A.L. Nail, Matilda Peeler, William Purington Bomar, Jr., Morris Jerome Stimson, James Harlan Burley, William Reilly Nail, Jr., Mark DeWitt Reynolds, William Reynolds, Peggy Reynolds Simpson, Elizabeth Annette Reynolds, Ann Reynolds, Sheryl Fillingim Croker, Jesanne Nail Rall, Teresa Nail, Ronald James Nail, Appellees.

No. 2–90–145–CV.

Court of Appeals of Texas,
Fort Worth.

April 24, 1991.
Rehearing Overruled May 28, 1991.

Malouf Lynch Jackson Kessler & Collins, and Joseph O. Collins, Jr., Scott D. Weber and Donald J. Malouf, Dallas, for appellants Fay Ann Wynne and Howell Smith Wynne.

Ball, Landrith & Kulesz, P.C. and David L. Lewallen, Arlington, for appellant Larry Henry Nail.

Shannon, Gracey, Ratliff & Miller, and Anne Gardner, William D. Ratliff, Jr., and B. Frank Cain, Fort Worth, for appellees George Thompson, IV and James L. Ervin, Trustees.

Sharp, Bates, McGee & Spurlock and William T. McGee, Haynes and Boone, and David E. Keltner, Fort Worth, for appellees Jerome Burley, Sharon Stimson Gilbert, Dennis Stimson, Jack Kirksmith, Jasper Kirksmith, Sam Nail Webb, A.L. Nail and Matilda Nail Peeler.

Before FARRIS, LATTIMORE and MEYERS, JJ.

## OPINION

FARRIS, Justice.

Larry Henry Nail, Fay Ann Wynne, and Howell Smith Wynne appeal a summary judgment which excluded them from participating in the distribution of the M.M. Cook testamentary trust because they were adopted family members. The Wynnes raise but one point of error; Nail raises several. All points rest on one main issue: whether M.M. Cook's adopted family members are entitled to participate in the distribution of the testamentary trust. We find the trial court was correct in determining the adopted parties are not so entitled, we overrule their points of error, and affirm the judgment.

M.M. Cook died on February 22, 1932, leaving a will which included the testamentary trust. The trust directed the trustees to make payments to five of Cook's siblings and the five siblings of her deceased husband; it further provided that five years after the last of these parties had died, the trust was to terminate. Upon such termination, the trust assets were to be delivered to *"the lawful heirs (or descendants of same), if there be any then living, <u>born of the body</u> of my* [named sibling or in-law]; *said ... share[s] to be divided and to be distributed to such <u>lawful heirs</u> (or descendants of same), per stirpes and not per capita...."* (Emphasis added.) Two of Cook's named siblings were J.H. Nail and Mollie Nail Pyle. Nail had a natural-born son, James Henry, Jr., who adopted the appellant Larry Nail and his brother Ronald Nail (who has waived participation in these proceedings). Pyle had one daughter, Lou Netta Pyle Kirksmith, who gave birth to three sons, including Jim Buck Kirksmith, who adopted the appellants Fay Ann Wynne and Howell Smith Wynne. J.H. Nail, Mollie Nail Pyle, and their children are deceased. J.H. Nail leaves eight descendants to possibly take under this trust, including adopted Larry and Ronald Nail; Mollie Nail Pyle leaves four descendants, including the adopted Wynnes.

In determining that Nail and the Wynnes were not entitled to take under the trust, the court correctly looked to the state of the law at the time of M.M. Cook's death and the impact of that law applied in conjunction with the language of the trust instrument. *See Vaughn v. Vaughn*, 161 Tex. 104, 337 S.W.2d 793, 796 (Tex.1960); *Tindol v. McCoy*, 535 S.W.2d 745, 750 (Tex. Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Of heightened importance was the phrase "born of the body," which is from a similar vein of phrases including "heirs of the body," "bodily heirs," "lineal descendants as would by law inherit," "lawful children," "child or children or descendants of any child or children," and even the words "born" and "children" standing alone. Each of these similar phrases has been construed to exclude adopted persons from benefitting under a will or trust. *See Cutrer v. Cutrer*, 162 Tex. 166, 345 S.W.2d 513, 515, 517 (1961) (*"an adopted child is not entitled to property conveyed or devised to the 'children' of the adoptive parent," "'heirs of his body' ... ordinarily embraces only lineal blood descendants of the designated person"*); *Vaughn*, 337 S.W.2d at 797 (*use of the word "born" "renders it most improbable that [the tes-*

*tator] was referring to children born to strangers"); Murphy v. Slaton,* 154 Tex. 35, 273 S.W.2d 588, 597 (1954) (*" 'child or children or descendants of any child or children' did not include adopted children"*); and *Cochran v. Cochran,* 43 Tex. Civ.App. 259, 95 S.W. 731, 732 (1906, no writ) *(where testator devised a bequest to the "lawful children" of a named party, it "could not be construed to be a devise to the adopted heir of such person").* *Also see* RESTATEMENT OF PROPERTY sec. 306 comment g (1940).

M.M. Cook devised her bequest to "lawful heirs (or descendants)" "born of the body" of her siblings. It is clear from the case law cited above that the word "born" precludes adopted beneficiaries not only among the immediate heirs of Cook's siblings (their children) but among their descendants as well. *See Vaughn,* 337 S.W.2d at 797, and *Murphy,* 273 S.W.2d at 597. Additionally, the term "lawful heirs (or descendants)" makes it even clearer.

The law in effect at the time Cook died provided that an adopted child could "inherit from the adopted as well as its natural parents." *See* Act of May 21, 1931, 42nd Leg., ch. 177, 1931 Tex.Gen.Laws 300, 302 (formerly TEX.REV.CIV.STAT.ANN. art. 46a, sec. 9). The child could inherit *from* its adopted parents, but not *through* them, and it is clear that the legislature was aware of the distinction, because that section continued to say that "children by birth and adopted children shall respectively inherit from and through each other." *Id.* While the statute did in some ways temporarily broaden the rights of an adopted child, it did not change what had been the law: that an adopted child could inherit from the adopting parent, but as that child was not in fact a child of the adopting parent, any devise to the child or children of the adopting parent could not include the adopted child. *See Cochran,* 95 S.W. at 732. The statute was later limited to this parent-child relationship after it was recognized that the statute included sub-

jects which were not addressed in its title and caption. *See Eck v. Eck,* 145 S.W.2d 231, 235 (Tex.Civ.App.—Austin 1940, writ dism'd judgm't cor.) The title of the statute read "Adoption of Minor Children," the caption read "establishing legal relations between the children and adopted parents." Those subjects which were not included, such as the relationship between an adopted child and the natural born siblings, were declared unconstitutional under article 3, section 35 of the Texas Constitution. What remained of the statute did not change the prior law, which did not allow an adopted child to "inherit from the collateral or lineal kindred of the adoptive parent." *See Eck,* 145 S.W.2d at 235, *citing Harle v. Harle,* 109 Tex. 214, 204 S.W. 317 (1918); *State v. Yturria,* 109 Tex. 220, 204 S.W. 315 (1918); and *Fletcher v. Persall,* 75 S.W.2d 170 (Tex.Civ.App.—Austin 1934, writ ref'd); *also see Ortega v. First RepublicBank Fort Worth,* 792 S.W.2d 452, 454 (Tex.1990). In applying this law to the language of the trust, the trial court correctly construed the instrument and rightfully granted the motion for summary judgment.

In affirming the judgment of the trial court, we apply the above analysis to the one point of error raised by the Wynnes and the several points raised by Nail.

▮ The Wynnes claim in their only point of error, and Nail claims in his third, that granting the summary judgment was incorrect because the language of the trust instrument was ambiguous and created a fact question. The question of whether a clause in a will is ambiguous is a question of law. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987). In this case, the law and the language of the testamentary trust made it clear that an adopted party could not inherit, and had M.M. Cook intended something to the contrary, it would have been necessary to indicate that intention by additional language or circumstances.[1] *See Ortega,* 792 S.W.2d at 454. Therefore, the trial court did not

---

1. The dissent ignores this requirement, as well as *Murphy v. Slaton,* 273 S.W.2d at 597, which held that the phrase "descendants of" followed by a term which precluded adoptees, also precluded adoptees in subsequent generations.

abuse its discretion in determining the trust was not ambiguous and in granting the summary judgment. These points are overruled.

Nail argues further in his fourth point of error that the summary judgment was incorrect because the trustees failed to demonstrate a lack of genuine issues of material fact. Again, this point is overruled because, as a matter of law, the clause was not ambiguous, and therefore, there remained no fact questions, only the need for the trial court to apply the proper law to the trust terms.

■ To further his argument that the trust instrument was ambiguous, Nail argues in his fifth point that the trustees' motion for summary judgment was improper under the Uniform Declaratory Judgment Act. See TEX.CIV.PRAC. & REM. CODE ANN. chapter 37 (Vernon 1986). However, Nail is incorrect in his interpretation because section 37.003(a) of the Act provides the court with the right to construe a will through a declaratory judgment action as a matter of law. Id. sec. 37.003(a). Bringing such an action does not admit ambiguity, rather, it is proper where the parties are opposed, as they obviously were here. See United Services Life Ins. Co. v. Delaney, 396 S.W.2d 855, 858 (Tex.1965). This point is overruled.

Nail claims in his first point that he is a member of the class of persons expressly designated in the trust provisions to share in the trust estate. As the law we have outlined above specifies, not only did the "born of the body" language refer to the first generation, but to subsequent generations as well. See Murphy, 273 S.W.2d at 597. Further, the law in effect did not allow the adopted to inherit from the lineal or collateral kindred of the parents, only the parents themselves. See Eck, 145 S.W.2d at 235. Therefore, because of his adoption, Nail, by law, could not belong to this class. The point is overruled.

■ Nail's second point of error raises a similar point; in it he argues that the court erred in overruling his motion for rehearing because he presented the uncontested opinion of an expert who said Nail was a member of the class entitled to share in the trust estate, and that this therefore created a fact issue. Nail presented the affidavit of a doctor of English who broke down the trust language, diagrammed the sentences and opined that "born of the body" referred only to the first generation of heirs, the children of M.M. Cook's siblings. A motion for rehearing is equivalent to a motion for new trial. Hill v. Milani, 678 S.W.2d 203, 205 (Tex.App.—Austin 1984), aff'd, 686 S.W.2d 610 (Tex.1985). As the hearing on the summary judgment had already been held, the district court could consider only the record as it existed prior to granting the summary judgment, and did not abuse its discretion by refusing to consider the new material filed after that hearing. Id. Also see Marek v. Tomoco Equip. Co., 738 S.W.2d 710, 712 (Tex.App. —Houston [14th Dist.] 1987, no writ). Consequently, there was no error and this point is overruled.

■ Nail's sixth point asserts that the court erred in striking his counterclaim and cross-claim against the trustees because they matured and/or were acquired after Nail filed his pleadings. Nail asserted in these claims that the trustees breached their fiduciary duty, duty of good faith and fair dealing, and duty of impartiality to Nail; and also, that certain of the other beneficiaries wrongfully received distributions from the trust. Both of these claims relied upon a finding that Nail and the other adoptees were beneficiaries of the trust, which the law made clear they were not. Because they were not beneficiaries, then, the trustees did not owe them any duty, and any distributions made were not wrongfully paid or received. The court was correct in striking these claims because Nail had no standing to bring them. Additionally, had these claims had any merit, the court still would have been correct in striking them because they were filed only three days before the hearing, without leave of court and therefore violated Rule 63 of the Texas Rules of Civil Procedure. Nail's final point is overruled.

The judgment is affirmed.

MEYERS, Justice, dissenting.

I dissent. A genuine issue of material fact exists to preclude appellees' right to a summary judgment as a matter of law. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979).

I do not agree with the majority's determination that, as a matter of law, the phrase "born of the body of my sibling" relates to the term "lawful heirs."

The majority focuses upon cases in which language they consider similar to "born of the body" was interpreted to exclude adopted persons. However, assuming arguendo that this "similar" language means that "born of the body" does exclude adopted persons, each of the cases cited by the majority is distinguishable from the instant case because the phrases described in these cases directly referred only to the generation seeking to take under the will. Subsequent generations were not mentioned. In the instant case three generations are discussed. The testator designated ten trust beneficiaries. She then states that the heirs of these beneficiaries must be born of the beneficiaries' bodies and then to their "lawful heirs."

I do not overlook the majority's contention that *Murphy v. Slaton,* held that adopted children could not inherit under the terms of the will in question. *Murphy,* 273 S.W.2d at 597. However, I find that the language used in the *Murphy* will differs considerably from the language employed by the testator in the instant case. I do not agree that the ruling in *Murphy* creates a general rule that language indicating a need for biological relationship in one generation necessitates such a relationship for subsequent generations to inherit.

The majority points out that under the applicable law adopted children could not inherit from their adoptive parents and that if the testator had wished for adopted children to inherit, the testator must have so indicated by additional language. The testator's choice to use the term "lawful heirs" rather than "born of the body" in reference to the children of her sibling's offspring could be construed as such language.

The ambiguity of this will does not stem from the meaning of the phrase "born of the body," but whether the testator intended this phrase to apply to generations beyond those born of the siblings and in-laws she named in the will. There existing such an ambiguity, extrinsic evidence is admissible to aid the court in ascertaining the intent of the testator. *See Gee v. Read,* 606 S.W.2d 677, 681 (Tex.1980); *Unitarian Universalist Serv. v. Lebrecht,* 670 S.W.2d 402, 404 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).