**Joe L. PENLAND, Robert B. Penland, Jr., Carol Penland Fleming, and Michael McLaughlin, Appellants,**

v.

**Brooksie P. AGNICH, Patricia M. Granderson, and Mary E. McLaughlin, Appellees.**

No. 05–95–01427–CV.

Court of Appeals of Texas, Dallas.

Feb. 11, 1997.

---

Will S. Montgomery, M.D. Sampels, Jenkens & Gilchrist, P.C., Dallas, for Appellants.

John E. Agnew, Carter, Jones, Magee, Rudberg & Mayes, Dallas, R.W. Calloway, Turner, Rodgers, Calloway & Norris, Dallas, for Appellees.

Before KINKEADE, WHITTINGTON and HANKINSON, JJ.

**OPINION**

KINKEADE, Justice.

This is a will construction case. Appellants contend the trial court erred in granting a partial summary judgment that declared the term "lawful issue," as used in a will executed in 1945, included appellees, who are adopted. Because we conclude the trial court properly construed the will, we affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 10, 1945, J.M. Penland (Penland) executed a will. The will included specific bequests to his wife and his "beloved nephew (by marriage)," as well as a modest gift to two employees. The will disposed of the remainder and bulk of Penland's estate through a testamentary trust. The terms of the trust provided that Penland's wife, Ethel Penland, would receive income from the trust assets for the rest of her life. After her death, the remaining trust assets were to be divided into two equal portions. One half was to be distributed to Penland's five brothers, R.L. Penland, C.M. Penland, W.H. Penland, Paul Penland, and G.H. Penland, if they survived Penland's wife. If any brother died before Ethel Penland, then that brother's share of the assets would pass to his "lawful issue." The other half of the trust assets would pass to the brothers and sisters of Ethel Penland, if they survived her. If they did not survive her, their respective shares would pass to their "lawful issue." Penland specified in his will that the half brothers of his wife would be treated as her full brothers. The will did not expressly provide that adopted persons were included or excluded by the term "lawful issue."

Penland died fourteen days after he executed this will in 1945. His wife, who later remarried and changed her name to Ethel Penland Rossfield, died in 1993. The parties to this appeal survived Penland's wife and are grandchildren of one of Penland's brothers or one of his wife's brothers. Appellants ("Nonadopted Relatives") are biological grandchildren, and appellees ("Adopted Relatives") are adopted grandchildren.

In 1994, the trustees of Penland's testamentary trust brought suit seeking a declaratory judgment to identify the beneficiaries of the trust and to construe the term "lawful issue" as used in Penland's will. The Adopted and Nonadopted Relatives were parties to that suit. The trial court granted partial summary judgment declaring that "lawful issue" included the Adopted Relatives. The trial court severed this issue from the remaining issues in the case, and the Nonadopted Relatives appeal.

**LAWFUL ISSUE**

In their sole point of error, the Nonadopted Relatives argue the trial court erred in construing the term "lawful issue." They contend the law in effect when Penland executed his will controls the outcome of this case and that adopted persons were not included in the class of "lawful issue" under that law.

The Nonadopted Relatives rely on a 1931 statute, which provided that although adopted persons would be presumed to be "children" of their adoptive parents under wills executed by their adoptive parents, they would not be considered "children" of their adoptive parents in instruments executed by third persons (for example, other relatives of the adoptive parent), unless the intent to include adopted children was disclosed by additional language in the will or circumstances surrounding the execution of the will. *See Cutrer v. Cutrer,* 162 Tex. 166, 170–71, 345 S.W.2d 513, 516 (1961); *Hoch v. Hoch,* 140 Tex. 475, 481–82, 168 S.W.2d 638, 641 (1943). The presumption in effect when Penland executed his will, therefore, excluded adopted persons from class gifts to children in an instrument executed by someone other

than the adopted person's parents in the absence of evidence of a contrary intent in that instrument.

Since that time, the legislature has enacted and amended statutes providing presumptions regarding the rights of adopted persons under wills. Currently, the law provides that an adopted person is regarded as a "child" of his adoptive parent in wills unless other language indicates an intent to exclude children by adoption. TEX.FAM.CODE ANN. § 162.017(c) (Vernon 1996). This presumption applies even to instruments executed by third persons. *See id.* The Nonadopted Relatives argue that the law in effect at the time the will was executed should be applied and that application will result in exclusion of the Adopted Relatives from the class gift in this will.

■ Our primary inquiry in interpreting a will is to determine the intent of the testator. *Gee v. Read,* 606 S.W.2d 677, 680 (Tex. 1980). We must construe the will as a whole, so as to give effect to every part of it. *Id.* If the will is unambiguous, courts should not go beyond its specific terms in search of the testator's intent. *Sharp v. Broadway Nat'l Bank,* 761 S.W.2d 141, 143–45 (Tex.App.—San Antonio 1988), *aff'd as modified,* 784 S.W.2d 669 (Tex.1990). Absent ambiguity, the construction of a will is a matter of law. *Thornhill v. Elskes,* 381 S.W.2d 99, 104 (Tex. Civ.App.—Waco 1964, writ ref'd n.r.e.). We apply the law as it existed at the time the will was executed. *Hagaman v. Morgan,* 886 S.W.2d 398, 400 (Tex.App.—Dallas 1994, no writ). In this case that law was the 1931 adoption statute. *See* Act of May 21, 1931, 42nd Leg., R.S., ch. 177, § 9, 1931 Tex.Gen. Laws 300, 302, *amended by* Act of May 18, 1951, 52nd Leg., R.S., ch. 249, § 3, 1951 Tex. Gen. Laws 388, 390, *repealed by* Act of June 15, 1973, 63rd Leg., R.S., ch. 543, §§ 1, 3, 1973 Tex.Gen.Laws 1411, 1458. Nevertheless, our focus remains on the intent of the testator. *See Gee,* 606 S.W.2d at 680. The key question is not whether adopted persons have a right to take under the law, but whom the testator intended to share in his estate. *See Sharp,* 761 S.W.2d at 144.

The Nonadopted Relatives' argument that applying the 1931 adoption statute mandates the Adopted Relatives' exclusion from the will is flawed, because it fails to consider the intent Penland disclosed in his will to include adopted relatives. The law in effect at the time Penland executed his will was the presumption that adopted children do not take under a will executed by a third person unless the will discloses a contrary intent. *See Cutrer,* 162 Tex. at 170–71, 345 S.W.2d at 516. As the supreme court made clear in *Cutrer,* the 1931 adoption statute's presumption against including adopted children applied only if other language or circumstances of the will did not indicate a contrary intent. *Id.* Thus, if Penland's will discloses an intent contrary to the presumption of the 1931 adoption statute, that intent controls.

■ In *Cutrer,* the supreme court held that the term "issue" did not include an adopted child under the terms of two trusts. *Id.* at 172–73, 345 S.W.2d at 517–18. Although the court noted that "issue" connotes a blood relationship, it did not base its decision solely on the connotation of that word. Rather, the court considered the language of the trusts as a whole and the circumstances surrounding their execution in construing the term. *Id.* The court noted that the term "children" and "issue," both terms connoting a blood relationship, had been used interchangeably by the settlors in the creation of the two trusts. Additionally, in a third trust at issue in *Cutrer,* the parties had provided that if one of the beneficiaries died before the date of final disbursement, his share of the trust estate would belong to the "heirs of his body." *Id.* The court did not find anything in the language of the trusts or their surrounding circumstances to indicate an intent to include adopted children and therefore held the adopted child was excluded from all three trusts. *Id.* Unlike that will, the language and circumstances surrounding Penland's will disclose an intent to include adopted children in the term "lawful issue."

We look to the provisions of Penland's will as a whole to determine whether he intended to include adopted children in the term "lawful issue" contrary to the 1931 presumption. *See Perfect Union Lodge No. 10, A.F. & A.M. v. Interfirst Bank,* 748 S.W.2d 218, 220 (Tex.1988). The case of *Sharp* is instructive

on looking at a will in its entirety to determine whether a testator's intent overcomes a presumption. In *Sharp*, the court applied the law as it existed in 1953 when the will at issue had been executed. *Sharp*, 761 S.W.2d at 143–45. At that time, the law included a presumption that a testator intended to include adopted children unless other language indicated a contrary intent. *Id.* at 144. Nevertheless, in examining the will in its entirety, the court of appeals held that the testator intended the term "lineal descendants" to exclude adopted children. *Id.* at 145. The court based its holding on language in another provision of the will in which the testator expressly stated that his intent was that "relatives of the whole blood and/or their issue shall receive the greatest benefit ... and not any strangers or relatives of the half blood, or their issue." *Id.* Similarly, a review of Penland's will in its entirety leads us to conclude his intention was contrary to the 1931 presumption.

From the provisions of his will, it is apparent that Penland intended to divide his estate among members of his family regardless of their blood relationship. In addition to gifts to his wife, Penland made a specific bequest to a nephew whom he described as "beloved," yet who was related to him only by marriage. He also bequeathed half of the remainder of his testamentary trust to his wife's siblings, including her half brothers. Penland bequeathed the majority of his estate to family members who were not related to him by blood. These bequests, taken together, indicate that Penland considered his family to include not only those who were related to him solely by blood but also persons not related by blood. Penland intended the term "lawful issue" to include both persons related by blood and not by blood.

Penland's choice of words, when considered in the context of his entire will, also indicates an intent to include adopted children in the term "lawful issue." In choosing the term "lawful issue," Penland rejected other terms, such as "born" and "of the body," that have commonly been construed to exclude adopted persons. *See Ortega v. First RepublicBank Fort Worth*, 792 S.W.2d 452, 454 (Tex.1990) (op. on reh'g) ("any other

great-grandchildren who may be born after my death" excluded adopted children); *Vaughn v. Vaughn*, 161 Tex. 104, 110, 337 S.W.2d 793, 797 (1960) ("any child of my son ... born after my death" excluded adopted grandson where will did not indicate otherwise); *Nail v. Thompson*, 806 S.W.2d 599, 602 (Tex.App.—Fort Worth 1991, no writ) ("lawful heirs (or descendants ... ) ... born of the body" excluded adopted children); *Tindol v. McCoy*, 535 S.W.2d 745, 749–50 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.) ("children born to his body" excluded adopted children). Moreover, Penland did not use the word "issue" in isolation. He modified "issue" with the word "lawful." In the context of the dispositive provisions of Penland's will, we conclude his use of "lawful" and rejection of other modifiers, such as "bodily," further indicates that he intended to include all persons who became issue by any legal process, including adoption, rather than only those related by blood or body.

Absent ambiguity, the construction of a will is a matter of law. *Thornhill*, 381 S.W.2d at 104. Considered in its entirety, Penland's will is unambiguous and, as a matter of law, discloses an intent to include adopted persons in the class of "lawful issue." Therefore, we conclude the trial court correctly construed the will when it declared that the Adopted Relatives are included in the term "lawful issue."

Accordingly, we overrule the Nonadopted Relatives' sole point of error and affirm the trial court's judgment.